IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

FILED
2011 JUL 18 P 1: 26
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

CENTRAL DIVISION

| | |
|---|---|
| JEFF P. MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>　　　　Defendant. | Case No. 2:10-cv-857-SA<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is an action filed by Plaintiff, Jeff P. Martinez, asking the court to reverse the final agency decision denying his application for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381-1383(f). The ALJ determined that Plaintiff was not disabled because Plaintiff could perform the representative occupations of cutter-and-paster, touch-up screener, and final assembler. Plaintiff challenges the ALJ's decision, arguing that it is not supported by substantial evidence and is based on significant legal errors.

Having carefully reviewed and considered the ALJ's decision, the record, and the parties' pleadings, the court concludes that this case must be reversed and remanded because the ALJ's

decision fails to discuss the State of Utah's Vocational Evaluation report.

## BACKGROUND

On August 23, 2007, Plaintiff protectively applied for Supplemental Security Income under Title XVI of the Social Security Act, alleging a disability onset date of January 1, 2005 (Doc. 6, the certified copy of the transcript of the entire record of the administrative proceedings relating to Jeff P. Martinez (hereafter "Tr. __") 20-22, 110-15, 123). Plaintiff's application was denied initially (Tr. 72-73, 75-77) and upon reconsideration (Tr. 74, 84-86). Then Plaintiff requested a hearing before an ALJ (Tr. 83). That hearing was held on March 6, 2009 (Tr. 18-71). The ALJ issued a written decision on April 3, 2009, denying Plaintiff's claim (Tr. 6-17). Plaintiff then filed a request for review of the ALJ's decision, which was denied on July 7, 2010 (Tr. 1-4), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. § 416.1481.

On September 1, 2010, after receiving the Appeals Councils' denial of his request for review, Plaintiff filed his complaint in this case, which was assigned to United States District Judge Tena Campbell. (Doc. 3.) On November 5, 2010, the Commissioner filed his answer, along with the Administrative Record. (Docs. 5, 6.)

On September 27, 2010, the parties consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit, under 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure. The case was then reassigned to United States Magistrate Judge Samuel Alba. (Doc. 4.)

Plaintiff filed his opening brief on December 13, 2010 (Doc. 10), the Commissioner filed his answer brief on January 13, 2011 (Doc. 13), and Plaintiff filed his reply brief on February 23, 2011 (Doc. 17).

## STANDARD OF REVIEW

The court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citation omitted), and "requires more than a scintilla but less than a preponderance," *Lax*, 489 F.3d at 1084. The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute its judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th

Cir. 2006 (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id.*

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.* At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id.; see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the

claimant "cannot make an adjustment to other work," 20 C.F.R. §§
404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled
to benefits.

## ANALYSIS

Plaintiff makes the following two main arguments in
challenging the ALJ's decision: (1) the ALJ erred in assessing
Plaintiff's credibility and (2) the ALJ's step five finding is
not supported by substantial evidence.

### A. Credibility Finding

First, Plaintiff challenges the ALJ's credibility
assessment.  The ALJ found

> After careful consideration of the evidence,
> the undersigned finds that the claimant's
> medically determinable impairments could
> reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements
> concerning the intensity, persistence and
> limiting effects of these symptoms are not
> credible to the extent they are inconsistent
> with the above residual functional capacity
> assessment.

(Tr. 14.)

The ALJ is "'optimally positioned to observe and assess
witness credibility.'" *Adams v. Chater*, 93 F.3d 712, 715 (10th
Cir. 1996) (quoting *Casias v. Sec'y of Health and Human Servs.*,
933 F.2d 799, 801 (10th Cir. 1991)).  In other words:

> The opportunity to observe the demeanor of a
> witness, evaluating what is said in the light
> of how it is said, and considering how it
> fits with the rest of the evidence gathered
> before the person who is conducting the

6

> hearing, is invaluable, and should not be
> discarded lightly.
>      Therefore, special deference is
> traditionally afforded a trier of fact who
> makes a credibility finding.

*Williams*, 844 F.2d at 755 (citations omitted); *see also Lax*, 489
F.3d at 1089 (because the ALJ is in the best position to observe
the demeanor of witnesses, the ALJ's credibility findings deserve
special deference).

     In this case, the ALJ set forth the specific evidence he
relied on in evaluating Plaintiff's credibility. *See Qualls v.
Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (finding an ALJ
properly rejected a claimant's subjective statements where he
identified the specific evidence he relied on). Factors cited by
the ALJ included Plaintiff's daily activities, the effectiveness
of his medication in controlling his diabetes, evidence that he
exaggerated his condition, and objective medical findings that
did not support his contention that he was unable to perform work
activities (Tr. 14-15). *See Kepler v. Chater*, 68 F.3d 387, 391
(10th Cir. 1995) (naming factors to be considered in evaluating a
claimant's credibility); *Thompson v. Sullivan*, 987 F.2d 1482,
1489 (10th Cir. 1993) (listing all of these factors as proper
factors for the ALJ to consider in determining credibility); *see
also Qualls*, 206 F.3d at 1372 ("*Kepler* does not require a
formalistic factor-by-factor recitation of the evidence.").

     The ALJ relied on Plaintiff's daily activities as one reason
to discount his subjective complaints. *See White v. Barnhart*,

7

287 F.3d 903, 909 (10th Cir. 2002) (noting that daily activities may be considered in assessing credibility); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (same). Citing to a physical RFC assessment form (Tr. 297), the ALJ noted that Plaintiff was able to walk a lot. The ALJ observed that a Fourth Street Clinic Diabetes Note (Tr. 390) stated that Plaintiff got "lots of exercise" for six years, three times a week, and Dr. Manwill's psychological evaluation described Plaintiff as getting up between 6:00 and 7:00 a.m. and going to a gym where Plaintiff could shower and where he tried to work out a little bit (Tr. 407). Although Plaintiff cites to places in the record to support his argument that Plaintiff is not capable of vigorous exercise, the Commissioner also points out other places in the record that further support the ALJ's findings that Plaintiff walked a lot (Tr. 54-56, 302, 315) and regularly exercised at the gym (Tr. 57, 348, 388, 390, 391, 394). This court is not to reweigh the evidence or substitute its judgment for the ALJ's. *See Lax*, 489 F.3d at 1084. The court concludes that the daily activities upon which the ALJ relied are consistent with the ability to perform the minimal physical demands of sedentary work, and are supported by substantial evidence.

Another reason upon which the ALJ relied in discounting Plaintiff's subjective complaints was that Plaintiff's medication had effectively controlled Plaintiff's diabetes. *See Huston*, 838 F.2d at 1132 (explaining that ALJ may consider the effectiveness

of medication in assessing credibility). Specifically, the ALJ
wrote: "The records consistently indicate that the claimant's
diabetes is under good control." (Tr. 14.) The ALJ recognized
that Plaintiff experiences neuropathy with pain in his feet and
possibly Achilles' tendinitis, but noted that "[a]s suggested in
[Plaintiff's] testimony, the medical records also indicate that
the pain in his feet is worst at night." (Tr. 14.) In response
to Plaintiff's argument that the record does not support that
Plaintiff's diabetes was under good control (Doc. 10), the
Commissioner cites to many places in Plaintiff's medical records
showing that Plaintiff's diabetes was "controlled," under "good
control," or under "excellent" control from 2005 through early
2009 (Doc. 13 (citing Tr. 194, 207, 210, 211, 212, 214, 215, 218,
219, 274, 315, 317, 348, 351-52, 355, 356, 358, 359, 382, 383,
384, 386, 387, 388, 389, 390, 391, 394)). The Commissioner
concedes that Plaintiff had "no doubt experienced episodes where
his diabetes was 'uncontrolled' or 'worsening'" – a concession
that appears to contradict the ALJ's finding that the records
*consistently* indicate Plaintiff's diabetes was under good
control; however, having carefully reviewed the record, the court
concludes that substantial evidence in the record supports the
ALJ's finding that, despite some neuropathy in his feet,
Plaintiff's diabetes was under good control with medication.

A third reason the ALJ discounted Plaintiff's credibility
was because the ALJ found that Plaintiff exaggerated his

9

condition with regard to his hands and fatigue (Tr. 14-15). *See*
*Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (explaining
that ALJ may consider the fact that the claimant exaggerated her
claim). With regard to Plaintiff's hands, the ALJ found
Plaintiff's testimony that he had problems carrying things and
that his hands cramped up was inconsistent with the medical
evidence (Tr. 14-15). The ALJ observed that although one doctor
had noted Plaintiff had painful nodules on his hands, the doctor
did not treat or diagnose arthritis, and none of the treating or
reviewing doctors felt the evidence showed limited use of hands
(Tr. 14-16, 356). The ALJ also observed that the record
indicated that the cramping problems got better when Plaintiff
stopped taking Tricor. (Tr. 14, 358.) As such, the ALJ
indicated that Plaintiff may have exaggerated his hand complaints
to some degree. The ALJ further observed that, "despite
[Plaintiff's] representative's effort to lead [Plaintiff] into
describing hand limitations, the claimant indicated that he could
probably do fine manipulation and the only problem he described
was spasms related to something like circulation problems in the
morning." (Tr. 15, 41-43.) Thus, in light of Plaintiff's
inconsistent testimony, the ALJ did not give Plaintiff's
testimony regarding his hand limitations significant weight. *See*
*Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th
Cir. 1990) (explaining that ALJ could conclude claimant not

10

credible because his statements about the frequency of seizures and lifting capacity varied).

With regard to Plaintiff's alleged fatigue and the need to lie down four or five times for a couple hours per day, the ALJ recognized that, while Dr. Manwill listed fatigue and lack of energy as related to depression and anxiety, there was no indication that these symptoms were inconsistent with the ability to perform the minimal physical demands of sedentary work. (Tr. 15, 412.) As the ALJ noted, Dr. Manwill specifically stated that Plaintiff only had a slight impairment in the ability to be punctual, perform activities within a schedule, and maintain regular attendance. (Tr. 15, 413.) Therefore, the ALJ did not give Plaintiff's testimony regarding his fatigue great weight (Tr. 15). *See Bean*, 77 F.3d at 1213 (noting that ALJ may consider the fact that the claimant exaggerated her claim).

Plaintiff argues that other sources in the record support his credibility, including Dr. Rolfs' reports, Dr. Manwill's report, and the State of Utah's Vocational Rehabilitation report. Plaintiff argues that when these three sources are properly considered, the most reasonable conclusion to draw is that Plaintiff was fully credible.

The ALJ explained that he did not give full weight to Dr. Rolfs' and Dr. Manwill's opinions. Regarding Dr. Rolfs' reports, the ALJ found there was an inconsistency between the two reports and the lack of medical evidence supporting the change in the

11

recommendation regarding Plaintiff's ability to work. *See White*, 287 F.3d at 907-08 (explaining that treating physician's lack of explanation for claimant's decreased RFC assessment between two reports, with no apparent change in claimant's medical condition, was sufficient reason to reject treating physician's opinion); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (stating that an ALJ may reject a treating physician's opinion if he gives "specific, legitimate reasons" for doing so) (citation omitted). The ALJ further explained that another reason he did not give full weight to Dr. Rolfs' reports was because Plaintiff was "able to walk and exercise and keep his diabetes under control," and because there did "not appear to be a medical reason for limiting his work to part time other than his subjective complaints, which [the ALJ did] not find to be reliable." (Tr. 15.) The court concludes that the ALJ gave specific, legitimate reasons for his treatment of Dr. Rolfs' opinion.

Regarding Dr. Manwill's opinion, the ALJ noted that Dr. Manwill had found that Plaintiff "would have problems with work changes, setting goals, making decisions, dealing with detailed instructions and maintaining sustained concentration, but he *would have no problems* following simple instructions, working with supervisors or co-workers, being punctual, and maintaining a routine or being aware of and dealing with hazards." (Tr. 15, 406-12; Doc. 10, Attachment A (emphasis added).) The ALJ

12

explained that those limitations were adequately accommodated by the functional limitations in his RFC assessment. (Tr. 15.) The court concludes that, as with Dr. Rolfs' opinion, the ALJ gave specific, legitimate reasons for his treatment of Dr. Manwill's opinion.

On the other hand, regarding the State of Utah's Vocational Rehabilitation report (Tr. 172-84), the ALJ did not explain how his credibility finding was reached in terms of that report because the ALJ did not even mention that report. The State report is thirteen pages long. (Tr. 172-84.) It is thorough. It concludes that Plaintiff was "incapable of maintaining full-time employment" and that Plaintiff should be assisted "in his efforts to qualify for Social Security Disability Insurance benefits." (Tr. 183.)

The Commissioner concedes the ALJ's failure to consider the report, and suggests the court adopt the following analysis:

> The Commissioner recognizes that the ALJ did not specifically mention the December 2007 vocational evaluation, which indicated that Plaintiff was incapable of full time work (Tr. 172-84). The Commissioner contends that the ALJ implicitly rejected it for the same reasons he rejected Dr. Rolfs' and Dr. Manwill's opinions – it conflicted with the medical evidence and testimonial evidence of record, as well as the reviewing physicians' assessments that Plaintiff was capable of light work. *See Reyes*, 845 F.2d at 245 (an ALJ's duty is to resolve conflicts in the record).

(Doc. 13, at 16-17.)

13

The ALJ is not required to discuss every piece of evidence and every credibility factor listed in SSR 96-7p when assessing an individual's credibility, *see Qualls*, 206 F.3d at 1372 (explaining that a formalistic factor-by-factor recitation of the evidence is not required); however, having examined the record and applicable case law, the court concludes that the state vocational report was significant and the ALJ was required to explain his treatment of it in his opinion. As it stands, the court cannot review the ALJ's treatment of that report because the court can only speculate regarding the ALJ's treatment of it, and even whether the ALJ actually read it. Because the court concludes that the law requires the ALJ to explain his treatment of the report in his decision, the court concludes that it must remand this case for the ALJ to formally address in his decision his treatment of the state report in determining Plaintiff's disability.

In *Grogan v. Barnhart*, the Tenth Circuit explained:

> Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive. *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.") (quotation omitted); *see also* 20 C.F.R. § 416.912(b)(5) (defining the disability determinations of other agencies as evidence to be considered by the Social Security Administration). . . .

> . . . "[T]he district court may not
> create post-hoc rationalizations to explain
> the Commissioner's treatment of evidence when
> that treatment is not apparent from the
> Commissioner's decision itself. *See, e.g.,
> Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th
> Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S.
> 80, 87 (1943). . . .
>
> We therefore hold that the ALJ's failure
> to discuss the significance of the VA's
> disability evaluation . . . was reversible
> error. *See Clifton*, 79 F.3d at 1010;
> *Washington*, 37 F.3d at 1440.

399 F.3d 1257, 1263 (10th Cir. 2005). Thus, *Grogan* requires the

ALJ to consider a state agency report such as the one at issue.

It also disallows the court from engaging in post-hoc

rationalization to explain how the ALJ treated the report. *See

also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)

(explaining that magistrate judge erred in upholding decision by

supplying possible reasons for weight given to a report).

As a result, the court cannot determine whether the ALJ's

finding regarding Plaintiff's credibility is supported by

substantial evidence because the ALJ did not explain how he

reconciled the state's vocational report with his credibility

finding. Consequently, the court concludes that the ALJ's

failure to discuss the State of Utah's January 10, 2007

vocational report (Tr. 172-84) was reversible error, requiring

that this case be reversed and remanded for the ALJ to explain

his treatment of that report in reaching his determination

regarding Plaintiff's disability.

15

## B.  Step Five Finding

Second, Plaintiff contends that the ALJ's finding at step five of the disability analysis is not supported by substantial evidence.

The court recognizes that on remand, the ALJ may change his credibility finding, which may change the ALJ's RFC assessment, the hypothetical questions the ALJ would ask of a vocational expert, and so forth.  A change in the ALJ's finding regarding Plaintiff's credibility could thus completely alter the ALJ's decision.  Nevertheless, the court has carefully reviewed Plaintiff's challenge of the ALJ's step five finding.  On remand, were the ALJ to reach the same finding regarding Plaintiff's credibility, Plaintiff's argument regarding the ALJ's step five finding would be the same.  Thus, the court next examines Plaintiff's step five finding based on the current credibility finding, recognizing that on remand the following analysis may be moot; however, were the ALJ to reach the same credibility finding, the following analysis would be relevant.

Plaintiff appears to contest the restrictions included in the ALJ's hypothetical question to the vocational expert - which then became the ALJ's RFC assessment - as well as the ALJ's finding that he could perform other work.  (Doc. 10, at 10-13.) Having carefully considered Plaintiff's challenge, the court concludes that it lacks merit.

When the ALJ's findings regarding a claimant's impairment are adequately reflected in the ALJ's hypothetical question to the vocational expert, the vocational expert's testimony constitutes substantial evidence to support the ALJ's determination that the claimant could perform other work. *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). In other words, the ALJ's hypothetical question to the vocational expert must include only those limitations found by the ALJ to be substantially supported by the record. *See Qualls*, 206 F.3d at 1373 ("The ALJ propounded a hypothetical question to the [vocational expert] that included all the limitations the ALJ ultimately included in his [RFC assessment]. Therefore, the [vocational expert]'s answer to that question provided a proper basis for the ALJ's disability decision."); *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987) (the ALJ is only required to ask hypotheticals encompassing impairments that find support in the record).

In this case, the ALJ described a lengthy set of functional restrictions both in his hypothetical and in the RFC assessment in his decision. (Tr. 12-13.) Plaintiff appears to challenge that RFC assessment based on its failure to include all the limitations Plaintiff alleged. In this case, Plaintiff bore the burden of establishing his RFC, *see Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (explaining that in Social Security disability cases, the claimant bears the burden to prove her

17

disability), but the ALJ possessed the final responsibility for determining the RFC, based on the medical evidence as well as all the other evidence in the record, *see Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished opinion) ("The final responsibility for determining [RFC] rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence." (Citing SSR 96-5p, 1996 WL 374183, at *2, *5)); *see also* 20 C.F.R. §§ 416.920(a)(4), 416.945(a)(3); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Having reviewed the record, the court concludes that the ALJ's RFC assessment was reasonable. The ALJ considered all of Plaintiff's limitations that the ALJ found credible in crafting his RFC assessment, including Plaintiff's foot pain and fatigue, and Plaintiff's mental impairments.

Plaintiff also challenges the ALJ's RFC assessment by arguing that it is inconsistent with the DOT. As explained above, RFC assessments must be based on all relevant evidence in the record, not only the medical evidence. *See* 20 C.F.R. § 416.945(a); SSR 96-5p, 1996 WL 374183, at *5. Thus, a claimant's RFC is based on the evidentiary record of his abilities. It is immaterial whether the ALJ's assessment of Plaintiff's functional capacity is consistent with the DOT because the DOT - a publication of job descriptions - has no necessary bearing on the functional capacity possessed by any particular claimant. As did the ALJ in this case, an ALJ may refer to the DOT to describe

what the ALJ intends by an expressed limitation.  For example, the ALJ in the instant case found that Plaintiff could carry out only "simple work instructions" (Tr. 13).  The ALJ explained that "simple means claimant would be functioning at [DOT] GED levels of only – Reasoning: 3, Math: 1-2, Language: 1-2" (Tr. 13). Thus, the ALJ's reference to the DOT illuminated the ALJ's findings as to Plaintiff's abilities; in other words, the finding simply informed and gave context to the first finding.

Similarly, as explained in the Commissioner's answer brief, the vocational expert's testimony about jobs Plaintiff could perform also did not conflict with the DOT's GED levels.  (Doc. 13, at 22.)  Furthermore, the vocational expert was aware of Plaintiff's limitations when she testified that Plaintiff could perform the unskilled sedentary jobs of final assembler, touch-up screener, and cutter-and-paster (Tr. 66-68).  The vocational expert stated her testimony was consistent with the DOT, except for the availability of these jobs with a sit-stand option, which she testified was based on her experience (Tr. 66).  As the Commissioner explains in great detail, a reasoning level of two, applicable to the jobs of cutter-and-paster and touch-up screener, is consistent with the ALJ's finding that Plaintiff was limited to "unskilled work tasks" and "simple work instructions" (Tr. 13).  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (a limitations to "simple and routine work tasks" was most consistent with level-two reasoning).  In addition, the

19

vocational expert testified that her testimony was consistent with the DOT in that regard and was based on her years of experience (Tr. 66); therefore, the ALJ was entitled to rely on her testimony in concluding that Plaintiff could perform the jobs of cutter-and-paster and touch-up screener, *see Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished opinion) (holding that the ALJ is entitled to rely upon vocational expert testimony, especially since "[t]he whole point of vocational [expert] testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof"). Thus, after analyzing the reasoning level of the cutter-and-paster and touch-up screener jobs, both the vocational expert and the ALJ determined that these jobs matched Plaintiff's RFC for a range of unskilled work. This determination is entitled to deference, especially considering that the GED reasoning levels do not correspond directly to the agency's classifications regarding a job's skill level. *See Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999) (noting that the DOT classifications must be "massaged" into the agency's classifications because they are not an exact match). The court concludes that it was reasonable for the ALJ to find Plaintiff capable of the jobs cited by the vocational expert.

Finally, as set forth in detail by the Commissioner in his answer brief, even assuming *arguendo* that Plaintiff could not

vocational expert testified that her testimony was consistent with the DOT in that regard and was based on her years of experience (Tr. 66); therefore, the ALJ was entitled to rely on her testimony in concluding that Plaintiff could perform the jobs of cutter-and-paster and touch-up screener, *see Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished opinion) (holding that the ALJ is entitled to rely upon vocational expert testimony, especially since "[t]he whole point of vocational [expert] testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof"). Thus, after analyzing the reasoning level of the cutter-and-paster and touch-up screener jobs, both the vocational expert and the ALJ determined that these jobs matched Plaintiff's RFC for a range of unskilled work. This determination is entitled to deference, especially considering that the GED reasoning levels do not correspond directly to the agency's classifications regarding a job's skill level. *See Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999) (noting that the DOT classifications must be "massaged" into the agency's classifications because they are not an exact match). The court concludes that it was reasonable for the ALJ to find Plaintiff capable of the jobs cited by the vocational expert.

Finally, as set forth in detail by the Commissioner in his answer brief, even assuming *arguendo* that Plaintiff could not

perform the job of final assembler because it would require fine
vision, with the cutter-and-paster and touch-up screener jobs,
there are still 30,000 jobs in the national economy and 300 jobs
in the Utah economy that Plaintiff could perform (Tr. 66-67) - a
significant number of jobs in the national economy.

## ORDER

Based on the above analysis, because the ALJ failed to
consider the State of Utah's January 10, 2007 vocational
evaluation report (Tr. 172-84), **IT IS HEREBY ORDERED** that this
case is **REVERSED AND REMANDED** for the ALJ to consider that
report, make findings regarding that report, and reevaluate his
findings regarding Plaintiff's credibility and disability in
light of that report.

As explained in the above analysis, the court is aware that
the remainder of the ALJ's decision may be completely altered by
the ALJ's consideration of the State's Vocational Evaluation
report. Thus, the remainder of the court's analysis regarding
the ALJ's finding at step five of his analysis may be
inapplicable; however, if on remand the ALJ's finding regarding

Plaintiff's credibility remains the same, the court has concluded, based on the above analysis, that the ALJ's step five finding was supported by substantial evidence.

DATED this 18th day of July, 2011.

BY THE COURT:

Samuel Alba
United States Magistrate Judge